UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENISE ROCKWOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:03-cv-1571-DFH-TAB |
| ) | |
| AT & T WIRELESS SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON SUMMARY JUDGMENT

Plaintiff Denise Rockwood became a sales manager for AT & T Wireless Services, Inc. ("AWS") when it acquired the Indianapolis market of her previous employer in 2000. Rockwood claims that AWS demoted her to an account executive position because of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. AWS terminated her employment three months after the demotion. Rockwood claims that the termination was because of her age and to retaliate against her for complaining about age discrimination, both in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. AWS has filed a motion for summary judgment on all claims. As explained below, the motion is denied as to all of Rockwood's claims. When the evidence is viewed in the light reasonably most favorable to plaintiff, her claims present genuine issues of material fact that cannot be resolved as a matter of law on summary judgment.

*Summary Judgment Standard*

Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not a "paper trial." *Waldridge v. American Hoeschst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 252; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001).

*Discussion*

I.   *Sex Discrimination in the Demotion*

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The 1991 amendments to Title VII provide that an employee may prove unlawful discrimination because of sex under Title VII where she can show that sex was a motivating factor for her dismissal even if there were other reasons for the action. 42 U.S.C. § 2000e-2(m); *Venters v. City of Delphi*, 123 F.3d 956, 973 n.7 (7th Cir. 1997).

Rockwood first claims that she was demoted from a management position to an account executive position because she is female. She has not offered direct evidence of sex discrimination. She seeks to prove her claim of sex discrimination using the indirect burden shifting method that has evolved from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To defeat summary judgment by using the indirect method of proof, a plaintiff must first come forward with evidence that would allow a jury to find the elements of a prima facie case of discrimination. If the plaintiff meets this burden, the defendant may rebut the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the employment action. The plaintiff must then present evidence that could allow a reasonable jury to find that the stated reason was not a true reason, but

a pretext, which may permit in turn an inference of unlawful intent. *E.g.*, *Whittaker v. Northern Illinois University*, 424 F.3d 640, 647 (7th Cir. 2005); *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999).

      A.    *Rockwood's Prima Facie Case*

To establish a prima facie case of sex discrimination, the plaintiff must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). AWS does not dispute that Rockwood meets the first and third elements: she is a woman and she suffered an adverse employment decision when she was demoted from her sales manager position. For purposes of summary judgment, at least, AWS also assumes that Rockwood's performance as sales manager met its legitimate expectations. AWS argues, however, that because Rockwood was the only sales manager who reported to general manager Keith Blackmon, she cannot show that she was treated less favorably than a similarly situated male employee. Def. Br. at 14.

The fourth element may be satisfied where the plaintiff was replaced by someone outside the protected class, or more specifically in sex discrimination cases, by someone of the opposite sex. *Steinhauer v. DeGolier*, 359 F.3d 481, 484 (7th Cir. 2004), citing *Mills v. Health Care Service Corp.*, 171 F.3d 450, 454 (7th

Cir. 1999). It is undisputed that AWS replaced Rockwood with Dave Gilman as sales manager on September 3, 2002. Pl. Ex. I at 4; Pl. Response Br. at 8; Def. Reply Br. at 2, ¶ 61. As a result, Rockwood has demonstrated at least a genuine issue of fact as to whether she was replaced by an individual outside her protected class, satisfying the fourth element of her prima facie case for summary judgment purposes.

### B.     *Rockwood's Showing of Pretext*

Once a plaintiff establishes a prima facie case of sex discrimination, "a presumption of discrimination is established and the burden shifts to the defendant" to provide a legitimate non-discriminatory reason for its actions. *Whittaker*, 424 F.3d at 647. If the defendant meets this burden, as almost all do, the burden then shifts back to the plaintiff to show that the defendant's explanation was pretextual, meaning that it was dishonest. *Farrell v. Butler University*, 421 F.3d 609, 613 (7th Cir. 2005).

Rockwood has raised a genuine issue of fact as to whether the reason advanced by AWS on its motion for summary judgment was the true reason for its actions. AWS's principal defense has been that Rockwood voluntarily asked for the demotion. Genuine issues of material fact clearly bar summary judgment on that theory. But AWS seeks summary judgment on the alternative theory that *if* it had decided to demote Rockwood involuntarily, then it would have had good reasons for doing so, based on poor performance.

Federal litigation allows pleading in the alternative, of course, but AWS is not entitled to summary judgment on the basis of this hypothetical justification for a decision it claims it did not actually make. It is well settled in the Seventh Circuit's employment discrimination decisions: "One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision." *Appelbaum v. Milwaukee Metropolitan Sewerage District*, 340 F.3d 573, 579 (7th Cir. 2003) (affirming jury verdict for plaintiff in age discrimination case), cited in *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 726-27 (7th Cir. 2005) (reversing summary judgment on Title VII sex discrimination claim where plaintiff demonstrated that employer presented inconsistent or changing stories to explain why plaintiff was not hired); see also *O'Neal v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002) (vacating summary judgment on Title VII race discrimination claim where plaintiff presented evidence that employer offered first one reason, and then later a different reason for its refusal to hire plaintiff); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999) (reversing summary judgment on race discrimination claim where plaintiff produced evidence that employer had presented changing stories to explain its actions).

In its EEOC position statement and in deposition testimony, AWS has repeatedly asserted Rockwood was demoted because she asked for the demotion, not because of poor performance. There is at the very least a genuine issue of fact about the honesty of AWS's proffered explanation for a decision AWS says *it never*

*made.* "When a plausible reason was in fact not the reason, it is pretextual." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996), cited in *O'Neal*, 293 F.3d at 1006. AWS's own admissions support a finding that the reason it offers on summary judgment was not the "true reason" for Rockwood's demotion. The inconsistency of AWS's proffered explanations for Rockwood's transfer to an account executive position raises a genuine issue of fact as to whether the proffered reasons are pretextual, so AWS is not entitled to summary judgment on Rockwood's sex discrimination claim.

II.    *Age Discrimination*

Within three months after her demotion to account executive, AWS fired Rockwood. The stated reason was poor sales performance. Rockwood claims that AWS fired her because of her age in violation of the ADEA, 29 U.S.C. § 621 *et seq*. Plaintiff has offered a combination or "mosaic" of circumstantial evidence to support this claim. See, *e.g.*, *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736-37 (7th Cir. 1994) (describing this "mosaic" form of proof).[1]

---

[1] AWS argues that the "mosaic" approach in *Troupe* is disfavored and that the court should analyze Rockwood's arguments under the indirect burden shifting approach articulated in *McDonnell Douglas*. See *Demick v. City of Joliet*, 135 F. Supp. 2d 921, 933 n.5 (N.D. Ill. 2001). The only case cited by AWS on this point, however, acknowledges that the "standard set forth in *Troupe*" is still "good law" and applies the circumstantial approach. *Id.* at 933-37. Both the Seventh Circuit and this court have often employed the circumstantial mosaic approach described in *Troupe*. See, *e.g.*, *Isbell v. Allstate Insurance Co.*, 418 F.3d 788, 793-95 (7th Cir. 2005) (analyzing claim for age discrimination)*; Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 689-90 (7th Cir. 2003) (analyzing plaintiff's Title VII sex discrimination claim); *Weah v.*
(continued...)

First, Rockwood has offered evidence that AWS failed to follow standard company policies and practices in the process that led to her termination. Evidence that an employer deviated from a company policy can help support an inference that the employer acted on a discriminatory motive, at least when combined with other evidence. See *Rudin*, 420 F.3d at 723 (evidence that employer abandoned its own internal procedures in hiring process constituted circumstantial evidence of discrimination in Title VII race discrimination case); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-91 (7th Cir. 2001) (reversing summary judgment for employer in age and race discrimination case under indirect method of proof in part because plaintiff brought fourth evidence of "disparities in application" of employer's policy); see also, *e.g.*, *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977) (explaining that departures from town's normal zoning procedure may afford evidence of intentional discrimination in Fourteenth Amendment equal protection challenge); accord, *Huff v. UARCO, Inc.*, 122 F.3d 374, 386 (7th Cir. 1997) (evidence that company deviated from seniority policy was not sufficient to

---

[1](...continued)
*Trader Joe's*, 2004 WL 2757872, *5 (S.D. Ind. Nov. 9, 2004) (Hamilton, J.) (analyzing plaintiff's Title VII race discrimination claim). The mosaic approach can be useful in staying focused on the principal issue – whether the evidence would permit a reasonable inference of unlawful discrimination – when the plaintiff's evidence might be in danger of falling between the cracks of the more specific requirements of the indirect method and the direct methods of proof. The mosaic approach makes sense in this case because of the combination of age-based comments by decision-makers and the absence of identically situated younger employees for purposes of comparison.

establish circumstantial evidence of discrimination alone but supported age discrimination claim under indirect method).

AWS does not dispute the general legal principle. Instead, it contends that it had no such established policies and that employee discipline and termination in the company were wholly discretionary. The evidence shows a genuine issue of material fact as to whether AWS deviated from established procedures in the manner in which it disciplined and terminated Rockwood. For example, sales manager Gilman described a fairly specific system of an oral warning, a first written warning, a final written warning, and termination, all of which would ordinarily take at least 90 days. Testimony from Blackmon, Bitler, and Davidson supported AWS's claim that managers have some discretion, but a reasonable jury could find that AWS did not follow established disciplinary and warning procedures with Rockwood. Viewing the evidence in the light reasonably most favorable to her, she was given an oral warning and then a final written warning less than 30 days after returning to work from a leave, and was fired after less than 90 days of supervision by Gilman. Additionally, Gilman's testimony is conflicting with respect to whether Rockwood was ever placed on a performance improvement plan. Gilman testified that, other than in Rockwood's case, he has never issued a final written warning to an employee without first issuing both an oral and an initial written warning.

Rockwood has also offered evidence of repeated age-related remarks by sales manager Gilman, including those referring to Rockwood as an "old-timer," in which he indicated that performance standards would be higher for her than for other employees. The evidence would allow an inference that these remarks were based solely upon Rockwood's relatively long tenure with the company and its predecessor. But the evidence would also allow a reasonable inference of discriminatory animus based on age. The court is not suggesting that the comments alone would be sufficient proof of discriminatory intent, but they do not stand alone in this case.

Age-related remarks unrelated to the employment decision in question do not amount to direct evidence of discrimination. *Huff*, 122 F.3d at 384-85, citing *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996), and *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 660 (7th Cir. 1993). When considered with additional evidence, however, such comments may support an inference of discriminatory intent. *Huff*, 122 F.3d 374, 385 (7th Cir. 1997) (reversing summary judgment for employer under indirect method where decision-maker made age-based comments and company violated its own policy in making challenged decision); see also *Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 689-90 (7th Cir. 2003) (reversing summary judgment in sex discrimination case where plaintiff offered circumstantial evidence that just after promotion decision, one manager made a comment to another about "keeping them barefoot and pregnant"). Construing

the facts in the light most favorable to Rockwood, as the court must on AWS's motion for summary judgment, such comments, when taken with other circumstantial evidence presented, could support an inference of discriminatory motivation for Rockwood's termination.

There is also evidence that Rockwood was replaced by a substantially younger employee. Gilman testified that after Rockwood was terminated, he did not replace Rockwood and did not formally reassign her territory to anyone. Gilman hired Tracy Maddix, who Gilman estimated was in her twenties, as an account executive in March 2002. The evidence is not specific as to timing, but it appears that AWS assigned Maddix the downtown territory once held by Rockwood within a reasonably short time after Rockwood was fired. The evidence raises a genuine issue of material fact as to whether Rockwood was replaced with a substantially younger employee. That is circumstantial evidence that helps support Rockwood's claim.

Rockwood also argues that AWS treated her worse than it treated younger account executives by (1) refusing to provide her with a "ramp up" period when she began her position as an account executive, and (2) firing her for failing to meet her sales quota when other employees who also failed to meet quotas were not terminated.

AWS gave most new account executives a 120-day "ramp up" period during which their sales quota requirements were relaxed to allow them to learn the position and the territory. When Rockwood was demoted to account executive, she did not receive the benefit of such a ramp up period. She was fired for missing her quota before such a ramp up period would ordinarily have expired.

As the former sales manager supervising the territory in question, Rockwood had a less compelling reason for a ramp up period than others who were new to the position. Rockwood's evidence shows, however, that she was the only person in the position who did not receive a ramp up period. When James Haag was transferred from a retail position within the company to the account executive position, he was also given a ramp up period. AWS also gave former sales manager Jane Maurer a ramp up period when she was rehired by the company as an account executive.

The significance of this evidence, at least as part of a larger case of discrimination, will be for the jury to decide. AWS argues that it had good reasons for treating Rockwood differently. Rockwood argues that the differences between her situation and those of Haag and Maurer were not so great as to justify making her the only new account executive who did not get a ramp up period, and then firing her for failing to make her quotas before that period would have expired. When that evidence is combined with the arguably age-related comments by Gilman, assignment of Ms. Rockwood's territory to Maddix, and the evidence that

AWS failed to follow its established disciplinary procedures in Rockwood's case, the court cannot make the choice between those inferences in deciding a motion for summary judgment.

Rockwood also argues that she was terminated because of her failure to meet her sales quota while other substantially younger employees who also failed to meet their sales quotas were not terminated. AWS argues that such evidence cannot support an inference of discrimination because Rockwood's percentage of attainment of her sales quota was far lower than those of retained employees, rendering them not similarly situated to her.

The undisputed facts support AWS on this point, apart from the disputed issue concerning the ramp up period. The younger employees to whom Rockwood compares herself came much closer to meeting their sales quotas than she did. In determining whether employees are directly comparable, the court must examine all relevant factors, depending on the context of the case. An employee need not show complete identity in comparing herself to the better treated employee, but she must show substantial similarity. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

Rockwood first points to Haag, who also repeatedly failed to meet his sales quota. Gilman issued three warnings to Haag, including two final written warnings, before Haag transferred out of the department. AWS responds that

Haag is not similarly situated to Rockwood because, though he consistently failed to meet his assigned sales quotas, he performed significantly better than Rockwood. From October 2002 through December 2002, Haag, though failing to meet his assigned sales quota, attained a higher percentage of his quota than Rockwood. Rockwood attained 7%, 41%, and 29% for the months of October, November, and December 2002 respectively. Def. Ex. J. Haag attained 88%, 56%, and 76% during the same months. *Id*.

Nevertheless, Haag's sales performance was so deficient that Gilman gave him three written warnings. Gilman Dep. at 95-96. Haag's annual performance review form for 2003 shows that he continued to perform below quota and finished the year 2003 at less than 50% attainment. Bitler Dep. Ex. 33. Additionally, Gilman testified that after he gave Haag the final written warning, Haag received a deadline of thirty days to improve his sales performance. When Haag failed to meet this deadline, Gilman did not fire him only because he learned that Haag had applied for and had been accepted for a transfer (actually a demotion) within the company. Gilman Dep. at 79-81. Like Rockwood, Haag came to his account executive position from within AWS. AWS points out, however, that Haag came from a different department.

Apart from the issues of progressive discipline and whether she should have had the benefit of a ramp up period, the comparison of Rockwood to Haag does not support an inference of AWS's discriminatory intent. When Haag consistently

failed to meet his quota, he was also targeted for termination, but he found another position within the company.  With respect to the other younger employees to whom Rockwood compares herself – Jeffrey Schingel, Betsy Clark, John Houck, Blake Parkins, and Allison Bachosky – Rockwood has failed to come forward with sufficient evidence about such individuals' sales quotas to demonstrate that they were situated similarly to her.  The problem for AWS is that the court cannot ignore the issues of progressive discipline and whether Rockwood should have had a ramp up period, let alone the arguably age-based comments by Rockwood's supervisor.  The sum of the circumstantial evidence is sufficient to present a genuine issue of material fact for a jury to decide concerning whether AWS fired Rockwood because of her age.

III.   *Retaliation*

The ADEA also prohibits employers from retaliating against employees who complain of unlawful age discrimination in violation of the ADEA.  29 U.S.C. § 623(d).  Rockwood claims that her firing also amounted to unlawful retaliation for her complaints about age discrimination.  In support of this claim, she offers much more than the close proximity in time between her complaints and her firing.  She also relies on all the evidence discussed above:  Gilman's age-related comments, AWS's failure to follow established disciplinary procedures, and the failure to give her a ramp up period.  She also relies on evidence that both Gilman and Blackmon knew when they fired her that she had complained very recently about age discrimination.  Witness Bitler testified that Gilman was upset and hurt

by the charge and felt he was being attacked and had to walk on eggshells around Rockwood. Bitler Dep. 110. In their depositions, Gilman and Blackmon did not recall being told of Rockwood's age discrimination allegations. AWS points out that Gilman remembered that Rockwood had made an unspecified charge of unfair treatment using the company's internal complaint process, and AWS argues that his lack of more specific memory should not be held against him.

The Seventh Circuit has identified two distinct methods of proving retaliation in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 642-44 (7th Cir. 2002); see also *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678-79 (7th Cir. 2005) (applying the test articulated in *Stone* to a claim for retaliation under the ADEA). The first is to present direct evidence that the plaintiff engaged in protected activity and as a result suffered an adverse employment action. *Stone*, 281 F.3d at 644. The second is an adapted indirect method, which would require Rockwood to show that she (1) engaged in the protected activity of reporting unlawful discrimination; (2) was performing her job in a satisfactory manner; (3) was subjected to an adverse employment action; and (4) "only [s]he, and not any similarly situated employee who did not file a charge was subjected to [the] adverse employment action." *Id*. If the employer presents no evidence in response, the plaintiff is entitled to summary judgment. However, if the employer presents "unrebutted evidence of a noninvidious reason" for the adverse action, the employer is entitled to summary judgment." *Id*.

Rockwood claims she is relying on the adapted indirect method, but she has not identified a similarly situated employee who did not complain of age discrimination. In the court's view, her argument is better viewed as relying on a "mosaic" version of the direct evidence method. *Stone* does not disavow the thinking of *Troupe v. May Department Stores*, 20 F.3d 734, 736-37 (7th Cir. 1994), which cautioned against unduly mechanistic reasoning in employment discrimination cases. The danger of the unduly mechanistic reasoning is that someone who really is a victim of unlawful discrimination or retaliation (a) is unlikely to have evidence that amounts to an admission of unlawful intent, and (b) may be senior enough or unusual enough that she cannot show different treatment of another person who is so similarly situated as to support an indirect *McDonnell Douglas* proof. Yet if such a person can present a "convincing mosaic" of evidence that supports an inference of unlawful retaliatory intent, the case should be presented to the jury. The ultimate issue remains whether the plaintiff can prove that it is more likely than not that AWS fired her because she complained of age discrimination. In this case, the mosaic described above, when viewed in the light reasonably most favorable to Rockwood, can support a reasonable inference of retaliation. That is by no means the only reasonable way to interpret the evidence, but the case is now before the court on a motion for summary judgment.

*Conclusion*

For the foregoing reasons, AWS's motion for summary judgment (Docket No. 36) is denied. The court will hold a conference in the near future to set a new trial date.

So ordered.

Date: February 3, 2006

*David F. Hamilton*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kathleen D. Bruder
RHOADS & SINON LLP
kbruder@rhoads-sinon.com

Ryan C. Fox
HASKIN LAUTER LARUE & GIBBONS
rfox@hlllaw.com

Kandi Kilkelly Hidde
BINGHAM MCHALE
khidde@binghammchale.com

Denise K. LaRue
HASKIN LAUTER LARUE & GIBBONS
dlarue@hlllaw.com

Todd J. Shill
RHOADS & SINON LLP
tshill@rhoads-sinon.com